524 N.W.2d 607 (1994)
Matthew BEILKE, a minor, by his father, natural guardian and next friend, Jeffrey BEILKE; and Jeffrey Beilke and Kelly Beilke, individually, Plaintiffs and Appellants
v.
Jane Marie CORYELL, R.N.; and St. Luke's Hospital of Fargo, Defendants and Appellees
Civ. No. 940157.
Supreme Court of North Dakota.
December 6, 1994.
*608 Terry L. Wade, Robins, Kaplan, Miller & Ciresi, St. Paul, MN, for plaintiffs and appellants. Appearance by Craig E. Johnson, Wegner, Fraase, Nordeng, Johnson & Ramstad, Fargo.
Jack G. Marcil, Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for defendants and appellees.
VANDE WALLE, Chief Justice.
Matthew Beilke, a minor, by his father, natural guardian and next friend, Jeffrey Beilke, and Jeffrey Beilke and Kelly Beilke, individually, appealed from a judgment of the district court, East Central Judicial District, and from the court's order denying their motion for new trial in their lawsuit alleging negligence against Jane Marie Coryell, R.N., and St. Luke's Hospital of Fargo. We affirm.
In labor with her first child, Kelly Beilke was admitted to St. Luke's Hospital on November 18, 1989. On her admittance, it was noted on her chart that she was allergic to latex, which is similar to rubber. It was also noted at this time that Kelly's blood pressure was "elevated." She was given an epidural for relief of pain. Later in the evening, nurse Coryell decided that it would be best to catheterize Kelly because the epidural would have made it impossible for Kelly to feel the need to urinate. Although testimony at trial suggests that nurse Coryell was informed that Kelly was allergic to rubber and Coryell's own testimony makes it clear that this information was at least readily available, she used a rubber catheter. At trial, Kelly testified that although she could not feel the catheter, after the catheterization she began to feel a warm and itchy sensation and shortness of breath. Kelly was given Benadryl to alleviate her allergy symptoms. Subsequently, the baby's heart rate dropped and an emergency forceps procedure was used to deliver the baby.
Matthew was not breathing when he was born and had to be cared for in the intensive care nursery. He has been diagnosed with cerebral palsy. The Beilkes contended at trial that nurse Coryell's use of the rubber catheter caused an allergic reaction which eventually resulted in Matthew's cerebral palsy. After listening to substantial expert testimony, some supporting this theory and some rejecting it, the jury decided that the use of the rubber catheter was negligence but found that this negligence was not a proximate cause of the damages of which the Beilkes complained.
At trial, the jury was instructed on proximate cause as follows:
"A proximate cause is a cause which, in natural and continuous sequence, produces the injury and without which the injury would not have occurred. It is a cause which had a substantial part in bringing *609 about the injury either immediately or through happenings which follow one another.
"There may be more than one proximate cause of the injury. The fault of two or more persons may contribute to cause the injury, and in such case each person's fault is regarded as a proximate cause."
The Beilkes requested a jury instruction on proximate cause which would have replaced the second paragraph of the instruction with:
"There may be more than one proximate cause of the injury. The fault of two or more persons or the fault of a person and of a force of nature may contribute to cause the injury, and in such case each person's fault is regarded as a proximate cause."
The Beilkes argue that the refusal of the trial court to include the requested instruction was reversible error. They argue that because the jury was not instructed that the negligence of a person could combine with a "force of nature" without negating that person's liability, the jury likely thought that in order to find nurse Coryell's negligence to be a proximate cause, it had to decide that her negligence was the sole cause.
Jury instructions must fairly inform the jury of the applicable law. Crowston v. Goodyear Tire & Rubber Co., 521 N.W.2d 401 (N.D.1994). On appeal, we review jury instructions as a whole. Id. If taken as a whole they correctly advise the jury of the law, we will not reverse a jury decision on the basis of particular insufficient or erroneous parts of the instructions. Id. Thus, we review the adequacy of the entire instruction given and we do not dwell on the merits of instructions requested by counsel but not given by the trial court.
In Andrews v. O'Hearn, 387 N.W.2d 716 (N.D.1986), we declined to reverse a judgment on the basis of a proximate cause instruction which included the phrase "direct cause" and which the Andrews argued implied to the jury that proximate cause equated with "sole" or "last" cause. Id. We stated:
"Nor can we say that the instruction, taken as a whole, equates proximate cause with the last cause or the sole cause. The instruction states that there may be more than one proximate cause; that negligence of two or more persons may contribute concurrently as proximate causes of the injury; and that proximate cause is a cause which had a substantial part in bringing about the harm or injury either immediately or through happenings which follow one another."
Id. at 727. Because the instruction adequately explained the applicable law, we were left with the question of whether the part of the instruction at issue, within the context of the complete instructions, "would confuse or mislead an average jury." Id. We decided that it would not.
We are now faced with a similar question. The jury instruction, taken as a whole, adequately explained that a proximate cause is one which played a substantial part in bringing about an injury and that there may be more than one proximate cause. In Jones v. Ahlberg, 489 N.W.2d 576, 581 (N.D.1992), we defined proximate cause as "that cause which, as a natural and continuous sequence, unbroken by any controlling intervening cause, produces the injury, and without which it would not have occurred." We went on to explain that:
"[t]he negligence or other wrongful conduct of two or more persons may contribute concurrently as the proximate causes of an injury, and to be a proximate cause of an injury one's conduct need not be the last cause nor the sole cause of the injury. To warrant a finding that one's conduct is the proximate cause of an injury, it must appear that the injury was the natural and probable result of the conduct and that it ought to have been foreseen or reasonably anticipated by the defendant as a probable result of the conduct."
Id. at 581-82 (citations omitted). Accord Roemer v. Martin, 440 N.W.2d 122, 123 (Minn.1989) ["Before a particular factor can be said to be a concurrent cause, it must, first of all, be established that it is a cause."] Thus, we must affirm unless the part of the instruction at issue "would confuse or mislead an average jury."
*610 In support of their argument, the Beilkes cite several cases from Florida District Courts of Appeals which held that it was reversible error for the trial court to omit a concurring-cause instruction in cases in which the facts supported it. See, e.g., Goodman v. Becker, 430 So.2d 560 (Fla.Dist.Ct. App.1983). The Florida courts have held that evidence of a pre-existing physical condition warrants an instruction on concurring causes. Id. Although it is true that Florida's concurrent-cause instruction provides the option of including the phrase "some natural cause,"[1] the courts have not reversed because of the absence of that phrase. They have reversed because the concurrent-cause instruction was omitted altogether. Id.; Marinelli v. Grace, 608 So.2d 833 (Fla.Dist. Ct.App.1992); Banks v. Hosp. Corp. of Am., 566 So.2d 544 (Fla.Dist.Ct.App.1990); Miller v. Court, 510 So.2d 926 (Fla.Dist.Ct.App. 1987); Tilley v. Broward Hosp. Dist., 458 So.2d 817 (Fla.Dist.Ct.App.1984); Marrero v. Salkind, 433 So.2d 1224 (Fla.Dist.Ct.App. 1983).
In the instant case, the jury was instructed that a proximate cause is "a cause which had a substantial part in bringing about the injury either immediately or through happenings which follow one another." Not only did this part of the instruction inform the jury that other events or causes that occur simultaneously with or that follow the defendants' negligence will not negate the defendants' liability, it also instructed the jury on the "substantial factor" test for proximate cause. The "substantial factor" test was created by courts to provide for an adequate definition of proximate cause in those cases in which the alleged facts supported concurrent causes and in which the traditional "but-for" definition tended to mislead juries. W. Page Keeton et al., Prosser and Keeton on the Law of Torts, § 41 at 266-67 (5th ed.1984). See also Stahl v. Metropolitan Dade County, 438 So.2d 14 (Fla.Dist.Ct.App.1983); Anderson v. Minneapolis, St. Paul, and Sault Ste. Marie Ry. Co., 146 Minn. 430, 179 N.W. 45 (1920). In particular, the "substantial factor" instruction was created to adequately define legal causation in those cases in which multiple "causes concur to bring about an event, and either one of them, operating alone, would have been sufficient to cause the identical result." Keeton, et al., supra, at 266.[2] The jury was adequately instructed on concurrent causes. Therefore, the Florida cases cited by the Beilkes do not support a reversal in this case.
Like this Court in Andrews, the Florida courts were concerned with whether the instructions at issue were likely to confuse or mislead the jury. They decided that the absence of a concurring-cause instruction quite possibly misled the juries into believing that in order to find the defendants' negligence to be the proximate cause of the complained-of injuries, they were required to find the defendants to be the sole cause. E.g., Marinelli, supra. We do not have that problem in this case. Here the trial court gave a complete proximate cause instruction which included the statement that "[t]here may be more than one proximate cause of the injury." The special verdict form asked, "Was [nurse Coryell's] negligence a proximate cause of the Plaintiffs' damages?" (Emphasis added). See, e.g., Mobbs v. Central Vt. Ry., Inc., 583 A.2d 566 (Vt.1990) [noting precedent for holding that the use of the indefinite article "a" communicates adequately to *611 the jury that there may be more than one proximate cause]. In no way did the court suggest that the jury must find the negligence to be the sole cause of the injuries.
The Beilkes contend that mention of two or more persons without the mention of natural forces gave the jury the impression that only "persons" could be proximate causes and that, consequently, they were inhibited in making their argument that nurse Coryell's negligence combined with Kelly's preexisting physical condition to cause Matthew's injuries. However, a review of the transcripts makes it apparent that the Beilkes made this very argument without objection. In fact, the main theory of the case which they presented to the jury was that the nurse's negligent use of the rubber catheter combined with Kelly's allergies to set off a series of medical events which culminated in Matthew's cerebral palsy. Further, the term "proximate cause" is used to indicate cause with which liability may be attached. See generally Keeton, et al., supra, §§ 41 and 42.[3] The instruction concerning two or more persons merely reminded the jury that more than one "person" may have contributed to cause the injury in such a way as to make them legally liable for the damages. See Jones, 489 N.W.2d at 581 ["The negligence or other wrongful conduct of two or more persons may contribute concurrently as the proximate causes of an injury...." (emphasis added) ]; Leonard v. North Dakota Co-op. Wool Mktg. Ass'n, 6 N.W.2d 576, 581-82 (N.D.1942) ["Where an injury is the result of separate and distinct acts of negligence by different persons operating and occurring simultaneously and concurrently, each act may be regarded as a proximate cause and recovery may be predicated upon either or both acts." (emphasis added)].
"A party is entitled to instructions which present that party's theory of the case if justified by applicable law, the evidence and the pleadings." Spieker v. Westgo, Inc., 479 N.W.2d 837, 844 (N.D.1992). However, a trial court is not required to give instructions in the specific language requested by a party if the instructions given fairly and adequately inform the jury of the law. Olson v. Griggs County, 491 N.W.2d 725 (N.D.1992). The instructions given to the jury in this case left ample room for the Beilkes to argue that nurse Coryell's negligence played a substantial part in bringing about, and thus was a proximate cause of, Matthew's injuries. The defense did not argue that the jury was required to find Coryell's negligence to be the sole cause of Matthew's injuries. Instead, both parties presented a substantial amount of expert testimony. The jury apparently believed the defense's testimony that the use of the rubber catheter was not a cause of Matthew's cerebral palsy.
We find no reversible error in the trial court's jury instructions. Therefore, we affirm the denial of the motion for a new trial.
SANDSTROM, NEUMANN and MESCHKE, JJ., and BENNY A. GRAFF, District Judge, concur.
BENNY A. GRAFF, District Judge, sitting in place of LEVINE, J., disqualified.
NOTES
[1] The Florida concurrent-cause instruction, as cited in Goodman v. Becker, 430 So.2d 560, 561 n. 3 (Fla.Dist.Ct.App.1983), states:

"In order to be regarded as a legal cause of [loss] [injury] [or] [damage], negligence need not be the only cause. Negligence may be a legal cause of [loss] [injury] [or] [damage] even though it operates in combination with [the act of another] [some natural cause] [or] some other cause if such other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing such [loss] [injury] [or] [damage]."
[2] Prosser goes on to list two other situations in which the "reasonable factor" definition is appropriate:

"One is that where a similar, but not identical result would have followed without the defendant's act; the other where one defendant has made a clearly proved but quite insignificant contribution to the result, as where he throws a lighted match into a forest fire. But in the great majority of cases, it produces the same legal conclusion as the but-for test."
W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 41 at 267-68 (5th ed. 1984) [footnotes omitted].
[3] According to Prosser,

"The term `proximate cause' is applied by the courts to those more or less undefined considerations which limit liability even where the fact of causation is clearly established. The word `proximate' is a legacy of Lord Chancellor Bacon, who in his time committed other sins. The word means nothing more than near or immediate; and when it was first taken up by the courts it had connotations of proximity in time and space which have long since disappeared. It is an unfortunate word, which places an entirely wrong emphasis upon the factor of physical or mechanical closeness. For this reason `legal cause' or perhaps even `responsible cause' would be a more appropriate term. There is, however, no present prospect that long ingrained practice will ever be altered by the substitution of either."
Keeton, et al., supra, § 42 at 273 [footnotes omitted].